Okay, this is a case of People v. Cheryl McGee, 1-19-0192. You have the panel of Cynthia Cobbs, Justice Smith, and Justice Levin before you. This is the 1st District, 2nd Division. We let you argue for 10-15 minutes. We normally will not interrupt unless you get carried away. And then the other side gets to argue, and we ask them questions, and then the appellant. So with that in mind, you may proceed. Thank you. Thank you, Your Honor. For the record, Assistant Appellate Defender Matthew Daniels on behalf of the appellant Shemar McGee, I would ask to reserve about 3 minutes for rebuttal. Okay. Thank you. Your Honors and Counsel, may it please the Court. Following a bench trial, Shemar McGee was convicted of felony murder and aggravated discharge of a firearm. In trial, the parties agreed that McGee did not kill the decedent. McGee did fire in the direction of Anthony Evans and Marcus Washington outside his residence, but he did so in self-defense. The primary question at trial was, who was the initial aggressor during the gunfight between Evans and McGee? The trial court concluded it was McGee, but the evidence shows this was incorrect. On appeal, McGee acknowledges that this court gives deference to the fact finder when assessing sufficiency of the evidence claims. But Your Honors, that deference is not unlimited. And here, because the trial court unreasonably concluded McGee acting without lawful justification, this court should reverse outright its convictions. Turning to the facts, the gunfight between Evans and McGee was a fluid situation that included two separate exchanges of gunfire, separated by a brief flaw between the exchanges. And as I mentioned a moment ago, the primary question at trial was, who was the initial aggressor? We acknowledged at the outset that the trial court made an adverse credibility finding against McGee. Nevertheless, the evidence established that Evans and Washington were the initial aggressors. And I say that for several reasons. First, Evans and Washington engaged in a series of provocative acts that reasonably put McGee in fear for himself and the guests at the birthday party he was hosting. This begins with Evans and Washington appearing at the party as uninvited guests. The two were also known to carry guns, and Evans did bring a gun to the party. Showing up uninvited was all the more provocative in light of Evans' recent theft of McGee's gun a few weeks earlier. And by showing up at the party, Evans was also disregarding an agreement he'd previously made to stay away from McGee. Once inside the house, then, neither Evans nor Washington obeyed McGee's request to leave and instead stayed in the house until Johnny Tyra told them to leave. Then Evans walks out of the house facing the guests, which is itself a provocative gesture, and the pair lingered in the driveway instead of leaving the premises. Next, when McGee is outside, Evans shoots out the glass at the front door of the house, which is adjacent to the room where the party guests are. People take cover. The safety of McGee and the guests is undeniably at risk. Now while Evans and Washington claimed that this shot was in response to McGee shooting at them first, this is contradicted by the other evidence, specifically state witness Brittany Tyra. She was at the party. She was in the front room at the time. She testified that she heard gunfire from two guns and said that the first shot sounded like it came from the front of the house. The only ones who were in front of the house at that time were Evans and Washington. Then there's the lull in the gunfire I mentioned. Even during that lull, it was reasonable for McGee to remain in fear of his safety and the safety of others because Evans stayed in the driveway, he still has the gun, and it's reasonable to conclude that Evans wasn't done shooting at that point. Then during the second exchange of gunfire, that's when Evans shoots and kills the decedent. And we acknowledge that the ballistics evidence shows that McGee did go into the street and shooted Evans during that second exchange, but that was reasonable as well because Evans remained armed. At that point, someone had yelled that the decedent had been hit. And if Evans had run into the wooded area, he'd be able to hide out and attack again. So given the totality of the facts, it was unreasonable for the trial court to conclude that McGee acted without law justification. And this is true even in spite of the adverse credibility finding against McGee, as well as the consciousness of guilt evidence that the state points to. And that's because the trial court's finding of guilty here rested upon the finding that McGee was the initial aggressor. And that finding in turn rested upon the testimony of Evans and Washington. That testimony was credible. Your Honor, as our Supreme Court held in People v. Smith in 1999, witness testimony has to be positive and credible in order to sustain the conviction. And as Smith illustrates, outright reversal is warranted where the credibility of the state's chief witness is undermined in trial. Now Smith wasn't a self-defense case, but it was a first degree murder case involving a shooting. The primary question that that trial was, who was the shooter? And there the state's primary eyewitness to the shooting was contradicted in important respects by the state's more reliable occurrence witnesses. And the chief witness's actions after the shooting undermined your credibility as well. Here the testimony of Evans and Washington was too unreasonable to be credited. For starters, they both had a motive to minimize their culpability because Evans is the one that killed the decedents. So their testimony about what happened that night is by definition self-serving. And like Smith, the testimony that Evans and Washington provided was contradicted by a more reliable occurrence witness. In this case, Brittany Tyra, whose testimony was not self-serving. So for instance, Evans and Washington testify that they were invited to the party. That's rebutted by Brittany. And as I mentioned earlier, they both testified that it was McGee who had shot first, but that also was contradicted by Brittany. Additionally, like Smith, Evans' actions after the gunfight, that undermines his credibility as well. You'll remember that after he was shot in the foot, someone gives him a ride to the hospital. And as he's getting treated in the ER, he is questioned by a Robbins police officer. He talks to that officer until the officer mentions that another victim from the shooting is being brought into the ER. Then Evans decides to leave the hospital against medical advice. Then he waits about 24 hours to turn himself in. And he did so then only after getting a call from Washington, who was already in custody, letting them know that the police were looking for him. So in sum, the cornerstone of the state's evidence was the testimony of Evans and Washington. Since that wasn't believable, the trial court's finding that McGee was the initial aggressor was unreasonable. Your honors, the state was obviously required to prove each and every element beyond a reasonable doubt. And they failed to do so here because the evidence showed that McGee's actions were lawfully justified. He reasonably feared imminent harm from Evans and Washington, and he wasn't the initial aggressor. Accordingly, for the reasons that are set forth in the briefs, as well as the arguments made today, we're requesting that this court reverse outright his convictions, and I welcome any questions from the bench. What about the question? You don't mention the fact that there was a video in, there's the police officer's testimony where your client denies that he had any gun, and the fact that he disappears for a period of time, that alone kind of knocks out most of your argument that there was actual evidence. Well, what can I say? This is very hard to distinguish the fact that his testimony is not very credible. And when you weigh in what he says versus what everybody else says, it appears less than credible. Your honor, as I mentioned, we acknowledge that there was the adverse credibility finding and you're right. There was the video of the statement he gave to the police when he eventually turned himself in. But nevertheless, a couple of points I'd like to make here. First, what's relevant for the self-defense analysis is the state of mind at the time of the shooting. While there is some consciousness of guilt that can be associated or inferred from the he then denies having shot anyone, having left the house during the party. Certainly those are considerations that the court was permitted to consider and that this court can consider. But again, that speaks to how much weight to give the consciousness of guilt evidence. The other point I'd like to make is that even in spite of the fact that the judge found that McGee wasn't credible and that there is this consciousness of guilt evidence, it didn't take away the burden on the state to still put on a credible explanation for what happened during the actual gunfights. It's not a binary decision that just because the judge concluded that the defendant wasn't credible, that by default that the occurrence witnesses for the states such as Evans and Washington were credible. The finder of fact still has to evaluate their testimony on its own merits. And here, when you do that, it's clear that they weren't credible. And when that sort of situation emerges, the state still isn't relieved of its burden. And here they haven't met their burden in terms of showing that the initial aggressor was any further questions. No. No. All right. You may go ahead. You can go ahead. Okay. May peace the court. Gerard Richard Burks Jr. on behalf of the people of the state of Illinois. Defendant wants this court to look at the evidence in the light most favorable to him. Contrary to what defendant wants, this court is tasked with reviewing the evidence in the light most favorable to the people. Here, the trial court in finding defendant guilty determined that defendant was the initial aggressor who initiated the series of events when he exited the home with his gun the first time and fired the first shot. That determination was correct and supported by the evidence for the following reasons. First, the testimony of Brittany Tyra, a completely neutral witness, rebuts defendant's self-defense claim. Excuse me, Brittany testified that she, that defendant got upset when Marcus and Anthony entered the home. Brittany saw Marcus and Anthony leave the home peacefully without threatening or disrespecting anyone. Then, Brittany saw defendant pace around the back door after Marcus and Anthony left. Then, Brittany saw defendant exit the back door and then she heard multiple gunshots and saw defendant re-enter the back door 40 seconds later holding a gun that was equipped with a laser. Brittany then saw defendant follow Johnny, Quinn, and Troy outside and then she heard a second group of gunshots. Brittany's testimony alone placed defendant outside doing both armed engagements. Second, the testimony of Marcus and Anthony established that defendant was the initial aggressor. Both Marcus and Anthony testified the defendant got upset when he saw them inside of the party. Both Marcus and Anthony testified that they left the party peacefully. Marcus testified that he heard a gunshot that came from behind him and Anthony, as he and Anthony pushed him on the ground and he returned fire. Anthony testified that defendant fired one shot at him from the side of the house as he and Marcus left the scene and he returned fire. Marcus and Anthony's testimony alone established that defendant fired the first shot as they left the scene peacefully and Anthony only returned fire after being fired upon first. Thus, initiating the chain of events that led to Troy Thompson's death. Third, the trial court's finding that defendant's testimony was incredible was supported by the evidence where even defendant's own witness, Johnny Tyra, never testified that he saw Marcus or Anthony with a gun inside of the house and he never testified that Marcus and Anthony disrespected anybody inside of the house. In fact, no other witness other than defendant testified that Marcus and Anthony threatened anyone or had a gun inside of the house. Fourth, the totality of the eyewitness testimony alone was sufficient to sustain defendant's felony murder and aggravated discharge of a firearm conviction where three witnesses saw defendant upset immediately before he exited the home the first time. Three witnesses testified that Marcus and Anthony left the home peacefully without threatening or disrespecting anyone. Both Marcus and Anthony's testimony established that defendant fired the first shot, Anthony returned fire, defendant initiated a second arm attack on Anthony, and Anthony returned fire again, and defendant shot Anthony in the foot as he retreated the crime scene. Finally, all the evidence viewed in the light most favorable to the people was sufficient to establish the elements of the offense's charge beyond a reasonable doubt. The alleged inconsistencies pointed out by defendant did not call into question any facts concerning the shooting. As such, this court should decline defendant's invitation to retry him on appeal. If there are no questions for the reasons set forth in our brief and the arguments presented here today, the people ask that you affirm defendant's conviction. Any questions? No questions for me. Okay, Matt, you can do your closing. Thank you, your honors. A couple points in rebuttal. First, we're not disputing the standard here. We agree that it's viewed, that the evidence is viewed in the light most favorable to the state. Second, as to the point that the inconsistencies here don't speak, don't call into question the shooting, that, I disagree. That's certainly the situation we have here because the, as I said, the key question here is who's the initial aggressor? And as the state points out in its argument, they're relying on Evans and Washington to say that the first shot was fired by McGee. And the inconsistency is that it's contradicted by the occurrence witness, Brittany Tyra, who did not have any reason to give self-serving testimony. She credibly testified that from where she was in the house, she heard the first gunshot come from the front of the house. And as the state conceded in its argument, that's not where anyone said McGee was. For that reason, there's certainly a clear basis that the testimony of Evans and Washington is contradicted on this material point of who the initial aggressor is. And so for the reasons that we've already put forth, we would ask that this court reverse that right. Thank you. You both did what you could with a tough case, and we appreciate it. We'll let you know as soon as we decide among ourselves. Thank you.